**Tonya WEBB, Plaintiff,**

**v.**

**AAA MID–ATLANTIC INSURANCE GROUP and Kevin V. Samsel, Defendants.**

**No. CIV.A.01–6180(JCL).**

United States District Court, D. New Jersey.

Nov. 24, 2004.

John P. Bostany, The Bostany Law Firm, Newark, NJ, for Plaintiff.

Jane A. Rigby, Esq., Carpenter, Bennett & Morrissey, Newark, NJ, for Defendant (Kevin M. Samsel).

Sanford Kaplan, Esq., Muscio & Kaplan, Denville, NJ, for Defendant (Mid–Atlantic Insurance Company).

## MEMORANDUM AND ORDER

LIFLAND, District Judge.

This diversity action arises out of an automobile accident in which passenger Tonya Webb ("Plaintiff" or "Webb") was injured in a car driven by Kevin Samsel ("Defendant" or "Samsel"). Plaintiff contends that AAA Mid–Atlantic Insurance Group ("Mid–Atlantic"), the driver's parents' insurance provider, is obligated to indemnify Kevin Samsel for any judgment exceeding the coverage limits of his liability policy. Presently before the Court are cross-motions for summary judgment seeking a declaration as to Mid–Atlantic's coverage obligations.

### Background

Unless noted otherwise, the parties do not dispute the following facts. In the early morning hours of July 28, 2001, Plaintiff was a passenger in a 1998 Honda CRX driven by Kevin Samsel. At that time the Honda CRX struck a parked car in Rahway, New Jersey, causing Plaintiff injuries. The parties dispute what caused the Honda to strike the other vehicle, but resolution of this issue is immaterial to the coverage dispute presented here.

Chester P. Samsel III, the driver's brother, was the owner of the Honda CRX. (Compl. ¶ 8, Ans. ¶ 8.). Chester P. Samsel III permitted Kevin Samsel to drive the Honda. (Brief in Support of Def. Summary Judgment Motion, Ex. 7.). At the time of the accident Chester P. Samsel III and Kevin Samsel resided with their parents, Caroline Samsel and Chester P. Samsel, Jr., at 723 Kaminski Drive in Rahway, New Jersey. (Id. at Ex. 6.). Chester P. Samsel III insured the vehicle involved in the accident through New Jersey Manufacturers Insurance Company. This policy had a combined single limit of $35,000. (Id. at Ex. 7; Certif. of John P. Bostany, ¶ 2.).

At the time of the accident Chester P. Samsel, Jr. and Caroline Samsel owned a 1996 Volkswagen Jetta GLS and a 1995 Lexus ES300. (Id. at Ex. 1.). They insured both of these vehicles under Mid–Atlantic policy number 1233–2556. (Id.). This policy identified Chester P. Samsel, Jr. and Caroline Samsel as the "named insureds," and provided a $250,000 per person and $500,000 per accident limit of liability for bodily injury and property damage. (Id.).

### Mid–Atlantic Policy Provisions

#### a. Liability Coverage

According to the terms of Caroline and Chester P. Samsel Jr.'s liability policy,

Mid–Atlantic agreed to "pay damages for 'bodily injury' or 'property damage' for which any 'insured' becomes legally responsible because of an auto accident".

The liability coverage portion of the policy, in relevant part, defines "insured" as:

(1) You or any **"family member"** for the ownership, maintenance, or use of any auto . . . ."

(2) Any person using **"your covered auto."**

"You" and "your" refer to (1) the "named insured" shown in the declarations and (2) the spouse if a resident of the same household. "Family member" is defined as "a person related to you by blood, marriage, or adoption who is a resident of your household . . . ." In relevant part, the policy defines "covered auto" as "[a]ny vehicle shown in the Declarations." Under certain circumstances, a vehicle that the named insured subsequently owns may also become a "covered auto."

### b. Exclusion From Liability Coverage

The dispute in this case focuses on the third exclusion from liability coverage found in subsection B of Mid–Atlantic's policy. This section in its entirety states:

B. We do not provide Liability Coverage for the ownership, maintenance, or use of:

1. Any motorized vehicle having fewer than four wheels.

2. Any vehicle, other than **"your covered auto,"** which is:

a. owned by you; or

b. furnished or available for your regular use.

3. Any vehicle, other than **"your covered auto,"** which is:

a. owned by any **"any family member"**; or

b. furnished or available for the regular use of any "**family member.**"

### c. Exception to Exclusion

However, this exclusion (B.3) does not apply to your maintenance or use of any vehicle:

a. Owned by a **"family member"**; or

b. Furnished or available for the regular use of a **"family member."** [1]

### *Standard of Review*

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *Fed. R.Civ.P.* 56. Rule 56(e) requires that when a motion for summary judgment is made, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Id.*; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment.

---

1. Plaintiff notes that the "Exception to Exclusion" language in Mr. and Mrs. Samsel, Jr.'s policy differed somewhat from the policy submitted by Mid–Atlantic in support of its motion for summary judgment. Whereas Mid–Atlantic's submitted policy provides that "exclusion (B.3) does not apply to your maintenance or use of any *vehicle,*" the Samsels' policy provided that the exclusion "does not apply to your maintenance or use of any *family member.*" (emphases added). Plaintiff argues that this discrepancy constitutes an ambiguity requiring a finding of coverage, an argument that the Court addresses in Part 3.c of this Memorandum and Order.

*Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505. If the evidence is such that a reasonable fact-finder could find in favor of the non-moving party, summary judgment should not be granted. *Id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The burden of showing that no genuine issue of material fact exists rests initially on the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A litigant may discharge this burden by exposing "the absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548. In evaluating a summary judgment motion, a court must view all evidence in the light most favorable to the non-moving party. *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348; *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976).

Once the moving party has made a properly supported motion for summary judgment, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Fed.R.Civ.P.* 56(e); *Anderson,* 477 U.S. at 242, 106 S.Ct. 2505. The substantive law determines which facts are material. *Id.* at 248, 106 S.Ct. 2505. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* No issue for trial exists unless the nonmoving party can demonstrate sufficient evidence favoring it such that a reasonable jury could return a verdict in that party's favor. *Id.* at 249, 106 S.Ct. 2505

### Discussion

Webb's complaint consists of three counts. The first seeks recovery for injuries sustained as a result of the accident. The second and third counts allege that Kevin Samsel is an insured under the Mid–Atlantic policy and is therefore entitled to indemnification for Webb's injuries. Therefore, the motion now before the Court seeks a declaratory judgment that Mid–Atlantic is obligated to provide insurance coverage to Kevin Samsel. Webb contends that as a family member of the named insureds and a resident of his parents' household, Kevin Samsel is an "insured" under the terms of the policy. Webb further argues that the exception to the coverage exclusion is ambiguous and, under New Jersey principles of insurance contract interpretation, should be resolved in favor of coverage.

Mid–Atlantic denies that it is obligated to provide liability coverage under the facts of this case, and cross-moves for summary judgment. Mid–Atlantic argues that Kevin Samsel's use of his brother's vehicle falls within one of the policy's exclusions from liability coverage. Specifically, Mid–Atlantic contends that liability coverage does not apply when a family member such as Kevin Samsel uses a family member-owned vehicle other than those explicitly covered by the policy.

### 1. Interpretation of Insurance Contracts Under New Jersey Law

#### a. General Principles

In *Zacarias v. Allstate Ins. Co.,* 168 N.J. 590, 775 A.2d 1262 (2001) the New Jersey Supreme Court reviewed the general principles governing insurance contract interpretation. Courts should give "special scrutiny" to insurance contracts because of the "stark imbalance between insurance companies and insureds in their respective understanding of the terms and conditions of insurance policies." *Zacarias,* 168 N.J. at 594, 775 A.2d 1262 (citing *Gibson v. Callaghan,* 158 N.J. 662, 669, 730 A.2d 1278 (1999)). With this imbalance between the contracting parties in mind,

insurance contracts should not be accorded unnecessarily technical interpretations. "[T]he words of an insurance policy are to be given their plain, ordinary meaning." *Id.* at 595, 775 A.2d 1262. Under the longstanding "doctrine of reasonable expectations," courts should give effect to "[t]he objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts." *Id.* Thus, courts may "depart from the literal text and interpret it in accordance with the insured's understanding, even when that understanding contradicts the insurer's intent." *Id.* at 601, 775 A.2d 1262.

■ A court will construe ambiguous language in favor of coverage for the insured. *Doto v. Russo,* 140 N.J. 544, 556, 659 A.2d 1371 (1995). An ambiguity exists in an insurance contract "[w]hen an insurance policy's language fairly supports two meanings, one that favors the insurer, and the other that favors the insured ...." *President v. Jenkins,* 180 N.J. 550, 563, 853 A.2d 247 (2004).

■ However, the presumption in favor of the insured when there is an ambiguity should not be employed to create an ambiguity which does not exist. A liberal construction of an insurance policy is not warranted when the policy is clear on its face. In the absence of ambiguity, therefore, the court must enforce the policy as written. *Priest v. Roncone,* 370 N.J.Super. 537, 544, 851 A.2d 751 (App.Div.2004).

### b. The "Named Insured"—"Insured" Distinction

As the New Jersey Appellate Division recently noted in *Botti v. CNA Ins. Co.,* 361 N.J.Super. 217, 824 A.2d 1120 (App. Div.2003), "[i]t is important to distinguish the concept of 'named insured' and 'insured.'" *Id.* at 226, 824 A.2d 1120. The

*Botti* court distinguished the two classes of covered individuals as follows:

> [T]he term "named insured" is self-defining. The term refers only to the names so appearing in the declaration. On the other hand, an insured is any one who is entitled to coverage. This coverage may result by virtue of a person's status as an operator or occupier of a covered auto. In addition, a "family member" of a "named insured" may be an insured.

*Id.* (internal citation omitted).

### 2. Application

■ In order to ascertain the scope of the contested exclusion in Mid–Atlantic's policy, the Court first examines the policy's liability coverage generally. The insurance policy lists Caroline and Chester P. Samsel, Jr. as the "named insureds." The significance of the "named insured" designation is that it describes the principal insureds under the policy and excludes any individual not so listed. It also specifies "covered autos" for which the named insureds pay their premiums. In this case, the Samsels paid premiums to receive liability coverage for the 1996 Volkswagen Jetta and the 1995 Lexus.

As noted above, those listed as "named insureds" are not necessarily the only individuals covered under the policy. *Botti,* 361 N.J.Super. at 226, 824 A.2d 1120. Other individuals not listed as "named insureds" may be entitled to liability coverage under certain circumstances enumerated by the policy.

The Samsels' Mid–Atlantic policy provided liability coverage "for 'bodily injury' or 'property damage' for which any 'insured' becomes legally responsible because of an auto accident." Importantly, various categories of individuals may qualify as an "insured." First, as named insureds, Mr. and Mrs. Samsel, Jr. clearly are insured

for ownership, maintenance, or use of *any* auto. Mid–Atlantic Policy, Part A, subs. B(1). In addition, the policy provides coverage for any "family member" who owns, maintains, or uses *any* auto. (*Id.* at B.2). A "family member" is a resident of the household related to the named insureds by blood, marriage, or adoption. Thus, under the language of B.1 in Part A, Mr. And Mrs. Samsel, Jr. and their resident children (Kevin, Chester, and Kristin) would be entitled to liability coverage for damages incurred while driving any auto. Plaintiff relies on this portion of the policy to argue that Kevin Samsel was insured under the parents' policy for the accident giving rise to this case.

Second, the policy provides coverage for any person using "your covered auto." "Your" refers to the "named insured" listed in the Declarations and a resident spouse of a named insured. Under the facts of this case, therefore, Mid–Atlantic agrees to provide coverage for *any* person who uses Mr. and Mrs. Samsel, Jr.'s Jetta or Lexus.

Exclusion B.3 states that liability coverage will not be provided for a vehicle other than "your covered auto" which a family member owns. Liability coverage is also not provided for a vehicle other than a "covered auto" which is provided to a "family member" for his or her regular use.

*The B.3 Exclusion*

The exclusion at issue in this case must be read closely in conjunction with the coverage provisions generally and the other subsections of the exclusionary language itself. As to the coverage provisions generally, Subsection B.1 of Part A designates as an "insured" any family member using any car. According to this provision, therefore, it would seem that Kevin Samsel would be covered under Mid–Atlantic's policy because he was a

family member using a car at the time of the accident. However, exclusion B.3 narrows the situations to which the broad language of subsection B.1 applies, by excluding coverage for "[a]ny vehicle, other than 'your covered auto,'" which is either owned by any family member or furnished for the regular use of any family member.

The named insureds have broad coverage for use of *any* auto, including one owned by a family member. By contrast, a "family member's" coverage varies depending on the ownership of the car involved in the accident. In other words, as the premium-paying named insureds, Charlotte and Chester Samsel, Jr. receive broader liability coverage than other "family members" regardless of the ownership of the car involved in the accident. This is reasonable since the named insureds are paying for an expansive form of coverage that includes their use of their "covered autos" as well as their use of other vehicles. However, while the policy will even cover the named insureds when they use an auto owned by another "family member," it provides lesser coverage to other "family members" when they use that same auto owned by that family member. Presumably that family member lending his own car out to another family member has his own liability insurance that covers permissive use by another, as in this case. Therefore, the named insureds' policy excludes coverage when a "family member" uses a vehicle owned by another family member (who is not a named insured). As explained below, the exclusionary language in B.3 of Mid–Atlantic's policy clearly distinguishes between the named insureds' and others' right to coverage.

Without specifically addressing the provision to any one class of potential insureds, i.e., "named insureds" and "family members," exclusion B.3 generally states that liability coverage will not be provided

for "the use of ... [a]ny vehicle, other than 'your covered auto,' which is owned by any 'family member,' or furnished or available for the regular use of any 'family member.'" Immediately following this subsection is an exception to this exclusion that is phrased in almost identical language. However, the exception provides that "this exclusion (B.3) does not apply to *your* maintenance or use of any vehicle owned by a 'family member' or furnished or available for the regular use of a 'family member.'" (emphasis added). These provisions clearly provide coverage to the named insureds in this case while denying it to other family members in the same situation. Reading these provisions together, coverage generally will not be provided when use of a family member-owned vehicle other than the named insureds' "covered autos" is involved, except when it is the named insureds themselves who are using the family member-owned vehicle. To interpret these provisions to provide coverage to Kevin Samsel under the circumstances of this case would render the exclusion ineffective.

Excluding coverage for a family member's use of a car owned by another separately insured family member is not uncommon. Provided the policy is clear about the exclusion, courts will enforce its terms. For example, in *Green v. Dawson*, 165 N.J.Super. 52, 397 A.2d 727 (App.Div. 1979), the court was presented with a factual scenario similar to the facts in this case. Selected Risks Insurance Company issued the Dawson parents an automobile liability policy. Their son Norwood, a resident member of the household, was involved in an accident as he was driving a car owned by his brother Mark, who was also a resident member of the household. Mark was separately insured with GEICO when the accident occurred. GEICO paid the full amount of coverage into court and the injured plaintiff sought to hold the parents' insurer, Selected Risks, secondarily liable for damages in excess of the GEICO policy limits. *Green*, 165 N.J.Super. at 54, 397 A.2d 727. The policy provided coverage for injury arising out of "the ownership, maintenance, or use of the owned automobile or any non-owned automobile." *Id.* at 55, 397 A.2d 727. A non-owned automobile was defined as "an automobile not owned by or furnished for the regular use of either the named insured or any relative ...." *Id.* The court concluded that "[b]ecause the car was owned by a relative it was excluded from the category of non-owned automobiles covered by the policy." *Id. Green* is illustrative because it confirms that exclusions from coverage of vehicles owned by a relative of the named insured are legally sound and supported by policy. The court's explanation for so holding is persuasive and applicable to this case:

> where an automobile is owned by or furnished for the regular use of any member of a family, the chances are very great that it will also be used by other members of the family, thus substantially increasing the risk of accident and injury. Consequently, if general family coverage is intended for such automobiles, they should justifiably be listed on the family policy so that a separate premium can be charged. The purpose of the exclusion in the "non-owned automobile" clause is to prevent an insured from obtaining coverage for some or all cars regularly used or owned by the insured by merely listing only one automobile on the family policy and paying a premium calculated upon the risk created by the ownership, maintenance, and use of only that one automobile.

*Id.* at 56, 397 A.2d 727 (quoting *DiOrio v. New Jersey Mfrs., Ins. Co.*, 63 N.J. 597, 613–14, 311 A.2d 378 (1973)).

### 3. Plaintiff's Arguments For Coverage

#### a. Kevin Samsel's "Family Member" Status

Plaintiff argues that by virtue of Kevin Samsel's status as a Samsel family member he is an insured under his parents' Mid–Atlantic policy. The argument is not so much incorrect as it is imprecise. Such a contention does not adequately take into account the real distinctions between "named insureds" and "insureds." As explained above, being an "insured" under the policy is a combination of status and circumstance. There is no question that as a "family member" residing in his parents' household, Kevin Samsel was a *potential* insured under the Mid–Atlantic policy. But the coverage inquiry does not end there. A "family member" is not insured under all circumstances by virtue of that status alone. Therefore, the Court cannot agree that Kevin Samsel is an insured merely because he is a resident family member of his parents' household.

#### b. The Honda Was Not a Covered Auto

Next, Plaintiff argues that Mid–Atlantic cannot prove that the Honda involved in the accident was not a "covered auto" during the time period in question. Plaintiff contends that the policy identifies a "covered auto" as any vehicle shown in the declarations or "any private passenger auto on the date that the insured becomes the owner." (Pl. Brief at 4.). However, a close reading of the policy reveals that a private passenger auto may become a "covered auto" under certain circumstances only when the named insured or the named insured's spouse becomes the owner of the auto. Here, Chester P. Samsel III owned the Honda involved in the accident. In addition, the Honda was not listed in the declarations as a "covered auto." Therefore, the Honda was not covered under the policy.

#### c. Alleged Ambiguity Does Not Result in Coverage

The policy issued to Caroline and Chester Samsel, Jr. printed the exception to the B.3 exclusion as follows: "However, this exclusion (B.3) does not apply to your maintenance or use of any 'family member.'" A Mid–Atlantic Project Manager certified that "family member" was a misprint that should have read "vehicle," an error that was subsequently corrected. (Cert. of Jill Neumayer, ¶¶ 8–10.). Plaintiff argues that the erroneous use of "family member" renders the exception to the exclusion ambiguous on its face, thereby resulting in coverage to Kevin Samsel. However, this position is unconvincing for two reasons.

First, under New Jersey law an insurance contract provision is ambiguous when it "fairly supports two meanings, one that favors the insurer, and the other that favors the insured." *Jenkins*, 180 N.J. at 563, 853 A.2d 247. The purported ambiguity here does not favor the insurer or the insured because it is patently nonsensical as written. Second, the exception to the B.3 exclusion clearly applies to Mr. and Mrs. Samsel alone, as evidenced by the use of the word "your" in the provision. The policy defines "you" and "your" as the "'named insured' shown in the Declarations" and "[t]he spouse if a resident of the same household." Thus, even if the Court were to find an ambiguity and resolve it in favor of the insured, Kevin Samsel would not be the insured benefiting from such a construction of the policy.

### Conclusion

For the foregoing reasons, Mid–Atlantic's motion for summary judgment will be granted and Tonya Webb's cross-motion for summary judgment will be denied.

332

Accordingly, **IT IS** on this 24th day of November 2004

**ORDERED** that Mid–Atlantic's motion for summary judgment is granted and Webb's Amended Verified Complaint against AAA Mid–Atlantic Insurance Group is dismissed, and

**IT IS** further **ORDERED** that AAA Mid–Atlantic is granted judgment on its cross-claim and it is declared that there exists no coverage under the AAA Mid–Atlantic Insurance Group insurance policy # 1233–2556 issued to Caroline Samsel and Chester P. Samsel, Jr. for liability to Tonya Webb incurred by Kevin V. Samsel.