973 A.2d 986 (2009)
408 N.J. Super. 147
Arcangelo CASSILLI, Jr., and Denise Cassilli, Plaintiffs-Appellants,
v.
George A. SOUSSOU, Selective Insurance Company of America, The Ohio Casualty Insurance Company, Defendants-Respondents.
Docket No. A-5205-07T2
Superior Court of New Jersey, Appellate Division.
Submitted May 28, 2009.
Decided July 6, 2009.
*988 Thomas E. Tucker, P.C., Upper Montclair, attorneys for appellants (Mr. Tucker, on the brief).
Hill Wallack, LLP, Princeton, attorneys for respondent Selective Insurance (Gerard H. Hanson and Todd J. Leon, of counsel and on the brief; Jennifer L. Reed, on the brief).
Before Judges PARRILLO, LIHOTZ and MESSANO.
The opinion of the court was delivered by
PARRILLO, J.A.D.
This is an insurance coverage matter arising from a December 13, 2005 auto accident in which defendant George Soussou (Soussou), driving his 2000 Chevy Venture minivan, collided head-on with a vehicle driven by plaintiff Arcangelo Cassilli, causing plaintiff serious injury. The Chevy Venture was insured under a Personal Auto Policy (PAP) issued to Soussou by State Farm Insurance Company. Plaintiff's subsequent negligence claim[1] against Soussou was resolved for the $100,000 State Farm policy limits of coverage. In an amended complaint, plaintiffs sought "excess" coverage under the PAP issued by defendant Selective Insurance Company of America (Selective) to Soussou's son Roger, which plaintiffs claimed also covered Soussou and the Chevy Venture.[2] The motion judge disagreed and granted Selective summary judgment dismissal of plaintiffs' complaint on the grounds that the Selective policy unambiguously excluded Soussou's Chevy Venture from coverage and that Soussou could not have reasonably expected otherwise. Plaintiffs' later motion for reconsideration was denied for the same reason.
On appeal, plaintiffs' argument relies principally on a claimed ambiguity in the declaration page of the Selective policy and an apparent contradiction in the policy language between the stated liability coverage *989 and an exclusion, both of which led Soussou to reasonably expect that he: (1) was the named insured, (2) was insured for "any auto," whether he owned it or not, and (3) was not subject to the relevant exclusion, which denies coverage to a "named insured" when driving a non-covered vehicle owned by him. We disagree. Soussou was not a named insured under the Selective policy nor was his Chevy Venture a "covered auto," placing him squarely within the exclusionary language of the Selective policy. Even assuming some ambiguity over his status as a named insured, he cannot be both a "family member" and "named insured," and therefore, in any event, falls outside the exception to the exclusion. Given this explicit bar, any expectation of coverage was simply not objectively reasonable.
By way of background, at the time of the accident, Soussou resided in the same household with his wife, Sylvia, and his two adult children, Priscilla and Roger. At his father's urging, Roger, who was a part-time college student, purchased automobile liability coverage for himself and members of his family from Selective. Sylvia and Priscilla contributed to the cost of the premium. The policy in effect at the time of the accident had a coverage period from March 7, 2005 to March 7, 2006, and had been mailed to Roger at the family's Wayne address. The policy's declaration sheet lists Roger's name and address in the upper left hand corner and identifies him as a "student." Further down, the document lists three vehicles "principally garaged at [Roger's] address" that are covered by the policy: a 2000 Ford Mustang, a 1992 Saab 900, and a 1996 Chevy Lumina. In the box designated "Operator Section," the names of the family members who operate these three vehicles are listed: Roger, Priscilla, Sylvia, and George Soussou. All three vehicles are registered in Roger's name, although his sister and mother use two of them. On occasion, about once a week, Soussou drives the Ford Mustang, which is the vehicle his wife uses. Soussou's Chevy Venture is not listed in the declaration page's "Description of Owned Autos." Correspondingly, no other family members drive the Chevy Venture, which Soussou uses for his business and, as noted, is separately insured. The declaration page also does not specifically identify any member of the family as a "named insured."
Selective's PAP contains a clause stating that "family members"[3] are covered when using "any auto." However, the PAP also contains an "Exclusion" section, which provides:
B. We do not provide Liability Coverage for the ownership, maintenance or use of:
....
2. Any vehicle, other than "your covered auto", which is:
a. Owned by you; or
b. Furnished or available for your regular use.
3. Any vehicle, other than "your covered auto", which is:
a. Owned by any "family member"; or
b. Furnished or available for the regular use of any "family member".
A "covered auto" is further defined as "any vehicle shown in the declaration [page]," which, as noted, does not list Soussou's Chevy Venture. Moreover, the exclusionary clause has an exception rendering it inapplicable to the named insured when *990 using a non-covered vehicle owned by another family member.
The motion judge, in granting Selective summary judgment, relied principally on the clear, plain language of the policy's exclusionary clause. He explained, firstly, that the relevant language of exclusion unambiguously bars from coverage any vehicle that is not a "covered auto"; secondly, that the "reasonable expectations doctrine is not applicable ... because there is no ambiguity in the language of the exclusion provisions discussed"; and thirdly, that the "subject vehicle was covered under another policy in [Soussou's] name," and for that reason "[i]t is not reasonable for [Soussou] to also claim coverage under [the Selective] policy where he is not the named insured and the subject vehicle is not covered."
Certain well-settled principles govern insurance contract interpretation. "First, in enforcing an insurance policy, courts will depart from the literal text and interpret it in accordance with the insured's understanding, even when that understanding contradicts the insurer's intent, if the text appears overly technical or contains hidden pitfalls, cannot be understood without employing subtle or legalistic distinctions, is obscured by fine print, or requires strenuous study to comprehend." Zacarias v. Allstate Ins. Co., 168 N.J. 590, 601, 775 A.2d 1262 (2001) (internal citations omitted). On this score, under the longstanding "doctrine of reasonable expectations," courts should give effect to "the objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts." Id. at 595, 775 A.2d 1262. Indeed, in Lehrhoff v. Aetna Cas. and Sur. Co., 271 N.J.Super. 340, 347, 638 A.2d 889 (App.Div.1994),[4] we held that a policy holder's "reasonable expectations of coverage raised by the declaration page cannot be contradicted by the policy's boilerplate," whether or not in plain language, "unless the declaration page itself clearly so warns the insured." Thus, the average policyholder does not have a duty to "chart his own way through the shoals and reefs of exclusions," and may rely solely on his or her reasonable expectations flowing from the representations on the declaration page to determine the extent of his or her coverage. Ibid. Of course, for a policyholder's expectations to govern over the plain language of an insurance contract, his or her expectations must be objectively reasonable. Clients' Sec. Fund of the Bar of N.J. v. Sec. Title & Guar. Co., 134 N.J. 358, 372, 634 A.2d 90 (1993).
Second, courts will construe ambiguous language in favor of coverage for the insured. Doto v. Russo, 140 N.J. 544, 556, 659 A.2d 1371 (1995). An ambiguity exists in an insurance contract "[w]hen an insurance policy's language fairly supports two meanings, one that favors the insurer, and the other that favors the insured...." President v. Jenkins, 180 N.J. 550, 563, 853 A.2d 247 (2004).
By the same token, "the presumption in favor of the insured when there is an ambiguity should not be employed to create an ambiguity which does not exist." Webb v. AAA Mid-Atlantic Ins. Group, 348 F.Supp.2d 324, 328 (D.N.J.2004). "A liberal construction of an insurance policy is not warranted when the policy is clear on its face." Ibid. In the absence of ambiguity, therefore, a court must enforce the policy as written. Priest *991 v. Roncone, 370 N.J.Super. 537, 544, 851 A.2d 751 (App.Div.2004). In other words, "the words of an insurance policy are to be given their plain, ordinary meaning." Zacarias, supra, 168 N.J. at 595, 775 A.2d 1262. The plain terms of the contract will be enforced if the "entangled and professional interpretation of an insurance underwriter is [not] pitted against that of an average purchaser of insurance," or the provision is not so "confusing that the average policyholder cannot make out the boundaries of coverage." Id. at 601, 775 A.2d 1262 (internal citations omitted).
We assess plaintiffs' contentions against these governing principles. Plaintiffs mainly argue that because there is no "named insured" on the declaration page of the Selective policy, a reasonable person in Soussou's circumstances would expect that individuals named in the "Operator Section" are the "named insureds." We disagree. Plaintiffs' argument overlooks the real distinction between "named insureds" and "insureds."
We have previously distinguished the two classes of covered individuals as follows:
[T]he term "named insured" is self-defining. The term refers only to the names so appearing in the declaration. On the other hand, an insured is any one who is entitled to coverage. This coverage may result by virtue of a person's status as an operator or occupier of a covered auto. In addition, a "family member" of a "named insured" may be an insured.
[Botti v. CNA Ins. Co., 361 N.J.Super. 217, 226, 824 A.2d 1120 (App.Div.2003) (internal citations omitted).]
In other words, those listed as "named insureds" are not necessarily the only individuals covered under the policy. Ibid.; see also Webb, supra, 348 F.Supp.2d at 328. Other individuals not listed as "named insureds" may be entitled to liability coverage under certain circumstances enumerated by the policy. Thus, being an "insured" under a policy "is a combination of status and circumstance." Webb, supra, 348 F.Supp.2d at 331.
While there is no question that as a "family member" residing in the same household as his son Roger, defendant Soussou was a potential "insured" under the Selective policy, nowhere in that policy is he designated a "named insured." And although its declaration page failed to specify a "named insured," under the circumstances, Soussou could not have entertained a reasonably objective expectation that he qualified as such. At the time of the accident, Soussou did not own any of the vehicles listed on the policy; did not pay any premiums on the policy; used only one vehicle on the policy once a week; and his primary vehicle, the Chevy Venture minivan which only he drove, was insured through a different insurance company. The name of his son, Roger, appears in the top left corner of the declaration page, in a space separate and apart from the "Operator Section," and the coverage information includes only the vehicles Roger owns, which, in our view, would lead a reasonable person to believe that the purchaser, Roger, was in fact the "named insured," especially given that Roger pays part of the premium and Soussou does not.
Plaintiffs nevertheless contend that all of the operators live in the same household and are related, which, when "[a]ll that really appears on [the declaration page] is identity of coverages and identity of drivers," leads a reasonable person to infer, as in Lehrhoff, "that by listing the drivers using the vehicle, . . . the purchaser of the policy is protecting all of them equally and, presumably, protecting them equally in respect of all the stated coverages without *992 qualification and without limitation." 271 N.J.Super. at 349, 638 A.2d 889.
This inference, however, is not warranted here. If Soussou actually considered himself a "named insured" under this policy, it is reasonable to expect that his primary vehicle  one that he drove six days per week  would be included as a "covered auto," so as not to be doubly paying for coverage from two different policies. A reasonable person faced with a declaration page listing none of the vehicles that he or she owns or drives on a daily basis, and insured under a policy he or she neither solicited nor paid for, would assume they are not the "named insured."[5]
Generally speaking, "[t]he significance of the `named insured' designation is that it describes the principal insureds under the policy and excludes any individual not so listed." Webb, supra, 348 F.Supp.2d at 328. The policy usually also specifies "covered autos" for which the named insureds pay their premiums. In this case, Roger, his mother and sister paid premiums to receive liability coverage for the Ford Mustang, Saab and Chevy Lumina vehicles. In addition to the named insured, the Selective policy provides coverage for any "family member" who owns, maintains, or uses any auto. A "family member" is a resident of the household related by blood, marriage or adoption. Thus, the coverage provision of the Selective policy generally designates as an "insured" any family member using any car.
Clearly, then, Soussou qualifies as an "insured" and would be entitled to liability coverage for damages incurred while driving any auto but for the policy's exclusionary clause. Exclusion B.3, supra, narrows the situations to which the broad language of B.1's liability coverage provision applies, by excluding coverage for "[a]ny vehicle, other than your `covered auto,'" which is either owned by any family member or furnished for the regular use of any family member.[6] "Your" refers, of course, to the "named insured." Thus, under the Selective policy, coverage will not be provided when use of a family member-owned vehicle other than the named insured's "covered autos" is involved, except when it is the named insureds themselves who are using the family member-owned vehicle. To interpret these provisions to provide coverage to Soussou under the circumstances of this case would render the exclusion ineffective.[7]
*993 Such a restriction is readily understandable. Indeed, it is entirely reasonable to afford a family member lesser coverage when he uses his own vehicle, which is not covered under the insuring agreement. Presumably that family member has his own liability insurance that covers his vehicle.
Excluding coverage for a family member's use of car that he or she or another family member owns and is separately insured "is not uncommon," is "legally sound and supported by policy." Webb, supra, 348 F.Supp.2d at 330. Provided the insuring agreement is clear about the exclusion, courts will enforce its terms. Ibid.; see also DiOrio v. New Jersey Mfrs. Ins. Co., 63 N.J. 597, 613-14, 311 A.2d 378 (1973); Green v. Dawson, 165 N.J.Super. 52, 54-55, 397 A.2d 727 (App. Div.1979). Here, the policy's exclusionary language is express, plain and unambiguous in its exemption from coverage, and clearly applies to Soussou. Moreover, the B.3 exclusion is not contradicted by the "any auto" language in B.1's coverage provision. Providing that an individual will be insured for the use of "any auto" is simply not inconsistent with excluding coverage for any vehicle other than a "covered auto" that is "owned by a family member" and presumably separately insured, as the two provide for mutually exclusive principles of coverage.
Because Soussou's Chevy Venture was not a "covered auto" and he was not designated a named insured, we are satisfied his circumstances and status fall squarely within the exclusionary language of the Selective policy. But even assuming some ambiguity over his status as a named insured, we are equally satisfied that he falls outside the exception to the policy's exclusion and that, in any event, had no objectively reasonable expectation of coverage.
Affirmed.
NOTES
[1] Plaintiff Denise Cassilli sued per quod.
[2] Plaintiffs executed a release and took an assignment of Soussou's claim for additional liability coverage against Selective.
[3] Under the PAP, "family member" means "a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child."
[4] The Supreme Court "share[d] the sentiments expressed ... in Lehrhoff in respect of the importance of the declarations sheet" in Zacarias, supra, 168 N.J. at 602, 775 A.2d 1262.
[5] Indeed, even from a subjective standpoint, it appears that Soussou's understanding of the information contained in the declaration page was that the listed operators "are members. . . of that household with a driver's license," and that the operator section did not mean anything more to him than that: "I don't read much into it." He claimed that when he would look at the declaration page, his duty, in short, was to "overlook[ ] the situation and ma[k]e sure [Roger, Priscilla, and Sylvia] paid their premiums."
[6] Immediately following this subsection is an exception to this exclusion that is phrased in almost identical language. However, the exception provides that "this Exclusion (B.3) does not apply to you while you are maintaining or "occupying" any vehicle which is . . . [o]wned by a `family member' or . . . [f]urnished or available for the regular use of a `family member.'" (emphasis added). Thus, the "named insured" has broader coverage than other family members for use of any auto, including one owned by a family member.
[7] Of course, even assuming Soussou to be a named insured, he still would not be covered under these circumstances since the B.3 exclusion bars coverage to a "named insured" for use of "[a]ny vehicle, other than `your covered auto,' which is . . . [o]wned by you[.]," and the exception to the B.3 exclusion only applies to a named insured's use of a vehicle "[o]wned by a `family member.'" Here, Soussou was driving a vehicle he himself owned and not covered under the Selective policy.