NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0400-23

BRITNEY MOTIL,

      Plaintiff-Respondent,

v.

WAUSAU UNDERWRITERS
INSURANCE COMPANY,[1]

      Defendant-Appellant.

_____

> **APPROVED FOR PUBLICATION**
> **April 5, 2024**
> **APPELLATE DIVISION**

Argued March 5, 2024 – Decided April 5, 2024

Before Judges Rose, Smith and Perez Friscia.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Gloucester County, Docket No. L-0734-21.

William P. Krauss argued the cause for appellant (Connell Foley LLP, attorneys; William P. Krauss and Evan David Haggerty, of counsel and on the briefs).

Michael T. Novick argued the cause for respondent (Brown, Novick & McKinley, attorneys; Michael T. Novick, of counsel and on the brief).

The opinion of the court was delivered by

---

[1] Improperly pleaded as Liberty Mutual Insurance Company.

PEREZ FRISCIA, J.S.C. (temporarily assigned)

In this automobile insurance coverage dispute, defendant Wausau Underwriters Insurance Company appeals from the August 25, 2023 Law Division order denying reconsideration of the June 23, 2023 order, which granted summary judgment to plaintiff Britney Motil, entitling her to $100,000 in underinsured motorist (UIM) insurance coverage. This appeal presents the novel issue of whether plaintiff was entitled to UIM coverage as a "covered driver" injured in an automobile accident while driving a "covered auto" with an identified alternate garaging address under her parents' automobile policy. Defendant disclaimed coverage, under the policy's uninsured motorist (UM)/UIM endorsement step-down provision, because plaintiff was neither a named insured nor a defined family member. We conclude there was ambiguity between the declaration and the policy's step-down provision of $15,000 in UIM coverage because the declaration plainly provided: $100,000 UM/UIM coverage for each person; plaintiff was a covered driver; the UM/UIM premium charged was the same for each vehicle; and plaintiff's vehicle was a covered vehicle with an alternate garaging address. Thus, the policyholder's reasonable expectation of $100,000 UIM coverage should be afforded. We affirm.

I.

On December 26, 2018, plaintiff sustained serious bodily injuries from an automobile accident while driving a 2014 Jeep Cherokee owned by her father, Charles Motil. Plaintiff filed a personal injury action that settled for the tortfeasor's $15,000 policy limit. Thereafter, plaintiff filed this declaratory judgment action seeking $100,000 in UIM coverage from defendant, alleging she was a covered driver at the time of the accident under her parents Charles and Louise Motil's policy.

Charles[2] had obtained insurance with defendant in February 2017. The four-page insurance declaration, effective November 1, 2018, reflected the "[n]amed [i]nsured[s]" on the policy were Charles and Louise. The mailing address listed was in Bridgeton. The "Vehicles Covered by [the] Auto Policy" provision listed four vehicles, including the 2014 Jeep Cherokee. The declaration named plaintiff as a covered driver under "Driver Information," and memorialized that the Jeep had an "[a]lternate [g]araging [a]ddress" in Blackwood.

Under "Coverage Information," the declaration stated: "Your total annual policy premium for all covered vehicles is shown below. A premium is

---

[2] Because the parties bear the same surname, intending no disrespect, we use their first names in this opinion.

shown for each type of coverage you have purchased for each vehicle. Where no premium is shown, you have not purchased indicated coverage for that vehicle." In the same section, it stated each of the four vehicles, including the Jeep, had a $100,000 bodily injury coverage limit and a $100,000 "[e]ach [p]erson" UM coverage limit, which included UIM coverage. Each vehicle had the listed charge of $103 UM/UIM "PREMIUM PER VEHICLE." The declaration also directed that the endorsement entitled "[UM] Coverage – New Jersey AS2106 06 16 Amendment of Policy Definitions" was "applicable to [the] policy."

The policy's "DEFINITIONS" section defined "you" and "your" as "'the named insured' shown in the [d]eclarations." "Family member" was defined as "a person related to you by blood, marriage or adoption who is a resident of your household. This includes ward or foster child." "Your covered auto" was defined as "[a]ny vehicle shown in the [d]eclarations."

The policy's UIM endorsement provided the caveat "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY." The endorsement was titled "Part C – [UM] Coverage" and stated in pertinent part:

INSURING AGREEMENT

A. We will pay compensatory damages which cover an "insured" is legally entitled to recover from the

owner or operator of an "uninsured motor vehicle" or "underinsured motor vehicle" because of:

> 1. "Bodily injury" sustained by an "insured" and caused by an accident; and
>
> 2. "Property damage" caused by an accident exempt under Paragraph 2[] of the definition of "uninsured motor vehicle". [sic]
>
> . . . .

B. "Insured" as used in this endorsement means:

> 1. You or any "family member". [sic]
>
> 2. Any other person "occupying":
>
> > a. "Your covered auto" with your express or implied permission; or
> >
> > b. Any other auto operated by you.

[(Emphasis added).]

The endorsement contained a "LIMIT OF LIABILITY" step-down provision, which stated:

> The limit of liability shown in the [d]eclarations for this coverage is our maximum limit of liability for all damages resulting from any one accident.
>
> However, for the [UM] [c]overage and [UIM] [c]overage, if the "insured" is not a named "insured" or "family member" under this policy and is not insured under any other automobile insurance policy, our maximum limit of liability for all damages resulting from one accident shall not exceed $15,000 per person and $30,000 per accident for "bodily

A-0400-23

injury" and $5,000 per accident for "property damages". [sic]

[(Emphasis added).]

On April 14, 2021, plaintiff requested UIM coverage from defendant. One week later, defendant's adjuster disclaimed coverage via letter, reasoning that upon investigation, "no UIM exposure exist[ed] for th[e] claim" as "the available policy limits for th[e] claim [we]re equal to the $15/$30k tortfeasor limits." On June 16, the adjuster clarified that "[a]s a non-resident family member, [plaintiff] [wa]s subject to the '[l]imit of [l]iability'" step-down "provision in the [UM c]overage endorsement of her parent's policy." The adjuster further stated, "[plaintiff] was neither a 'named insured' nor a 'family member' within the meaning of her parent's policy at the time of the accident" and therefore "d[id] not qualify for [UIM] benefits."

On June 24, 2021, plaintiff filed a three-count complaint against defendant claiming UIM benefits, unfair claim settlement practices in violation of N.J.S.A. 17B:30-13.1, and a breach of the covenant of good faith and fair dealing. After filing an answer, defendant moved to dismiss counts two and three without prejudice or alternatively to sever and stay those claims. On March 20, 2023, the motion judge granted severance.

Thereafter, the parties cross-moved for summary judgment. On June 23, 2023, the judge granted plaintiff's motion, ordering defendant to "provide

6                                                                    A-0400-23

$100,000[] in UIM coverage to . . . plaintiff," and denied defendant's motion. In his written statement of reasons, the judge cited Lehrhoff v. Aetna Casualty and Surety Company, 271 N.J. Super. 340 (App. Div. 1994), reasoning the facts were "remarkably similar." Although the judge found "the step[-]down provision in the policy [wa]s clear and unambiguous," he concluded that "under the[] circumstances[,] the reasonable expectations of the applicants for insurance must prevail." The judge further found, "the reasonable expectations of coverage raised by the declaration . . . cannot be contradicted by the policy's boilerplate" language and "the declaration . . . did not clearly warn the insured."

Defendant moved for reconsideration, which was denied. In his written statement of reasons accompanying the order, the judge found the "reasonable expectation doctrine" applied and concluded defendant could not "profit off of plaintiff and her family by selling them insurance and telling them it covers all of them but then . . . tell plaintiff she should buy her own insurance if she really wants the coverage."

On appeal, defendant argues the judge erroneously disregarded the unambiguous limitation of liability $15,000 step-down provision, which precluded plaintiff from receiving UIM coverage above the settlement for the tortfeasor's policy of $15,000.

II.

We review a trial court's summary judgment decision de novo. DeSimone v. Springpoint Senior Living, Inc., 256 N.J. 172, 180 (2024). "To decide whether a genuine issue of material fact exists, the trial court must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (alteration in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)).

It is well-settled that we review a court's interpretation of an insurance contract de novo. Katchen v. Gov't Emps. Ins. Co., 457 N.J. Super. 600, 604 (App. Div. 2019). Thus, we afford no special deference to a "trial court's interpretation of the law and the legal consequences that flow from established facts." Sealed Air Corp. v. Royal Indem. Co., 404 N.J. Super. 363, 374 (App. Div. 2008) (quoting Pressler, Current N.J. Court Rules, cmt. 3.1 on R. 2:10-2 (2007)).

An insurance policy "will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled." Norman Int'l, Inc. v. Admiral Ins. Co., 251 N.J. 538, 552 (2022) (quoting Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 525 (2012)). "In considering the meaning of an insurance policy, we interpret the language 'according to its plain and ordinary meaning.'" Flomerfelt v. Cardiello, 202 N.J. 432, 441

(2010) (quoting Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 175 (1992)). "If the plain language of the policy is unambiguous, we will 'not "engage in a strained construction to support the imposition of liability" or write a better policy for the insured than the one purchased.'" Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 200 (2016) (quoting Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 238 (2008)).

It is clear "an insurance contract is not per se ambiguous because its declarations sheet, definition section, and exclusion provisions are separately presented." Zacarias v. Allstate Ins. Co., 168 N.J. 590, 603 (2001). Indeed, "[a] rule that would require exclusions to appear on the declaration page would result in even more fine print and 'run the risk of making insurance policies more difficult for the average insured to understand.'" Katchen, 457 N.J. Super. at 609 (quoting Morrison v. Am. Int'l Ins. Co. of Am., 381 N.J. Super. 532, 540-41 (App. Div. 2005)). A policy provision is deemed ambiguous when it is objectively open to more than one interpretation. Where the terms are ambiguous, "they are construed against the insurer and in favor of the insured, in order to give effect to the insured's reasonable expectations." Cadre v. Proassurance Cas. Co., 468 N.J. Super. 246, 258 (App. Div. 2021) (quoting Flomerfelt, 202 N.J. at 441).

Our Supreme Court has established that we pay "special scrutiny to insurance contracts because of the stark imbalance between insurance companies and insureds in their respective understanding of the terms and conditions of insurance policies." Zacarias, 168 N.J. at 594. "[I]nsurance policies are contracts of adhesion 'between parties who are not equally situated.'" Pizzullo v. N.J. Mfrs. Ins. Co., 196 N.J. 251, 270 (2008) (quoting Meier v. N.J. Life Ins. Co., 101 N.J. 597, 611 (1986)). "Insurance policy exclusions must be construed narrowly." Merck & Co., Inc. v. Ace Am. Ins. Co., 475 N.J. Super. 420, 434 (App. Div. 2023) (citing Princeton Ins. Co. v. Chunmuang, 151 N.J. 80, 95 (1997)). "When there is ambiguity in an insurance contract, courts interpret the contract to comport with the reasonable expectations of the insured, even if a close reading of the written text reveals a contrary meaning." Zacarias, 168 N.J. at 595. "The objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." Ibid. (quoting Sparks v. Saint Paul Ins. Co., 100 N.J. 325, 338-39 (1985)).

In deciding Lehrhoff, 271 N.J. Super. at 347, this court held the "reasonable expectations of coverage raised by the declaration page cannot be contradicted by the policy's boilerplate unless the declaration page itself

clearly so warns the insured." Severino v. Malachi, 409 N.J. Super. 82, 98 (App. Div. 2009) (quoting Lehrhoff, 271 N.J. Super. at 347). "[I]nsureds are [not] relieved of their ordinary duty to review, and to be bound by the terms of, the policy itself"; however, the reasonable expectation of the policyholder governs where "a close, searching review would not have resolved the ambiguity." Pizzullo, 196 N.J. at 273. "Of course, for a policyholder's expectations to govern over the plain language of an insurance contract, his or her expectations must be objectively reasonable." Cassilli v. Soussou, 408 N.J. Super. 147, 154 (App. Div. 2009).

We have distinguished two classes of covered individuals in an insurance contract:

> [T]he term "named insured" is self-defining. The term refers only to the names so appearing in the declaration.
>
> On the other hand, an insured is [anyone] who is entitled to coverage. This coverage may result by virtue of a person's status as an operator or occupier of a covered auto.
>
> [Botti v. CNA Ins. Co., 361 N.J. Super. 217, 226 (App. Div. 2003) (citations omitted).]

"[T]hose listed as 'named insureds' are not necessarily the only individuals covered under the policy," and "[o]ther individuals not listed as 'named insureds' may be entitled to liability coverage under certain

11

circumstances enumerated by the policy." Cassilli, 408 N.J. Super. at 155. "Thus, being an 'insured' under a policy 'is a combination of status and circumstance,'" and, undoubtedly, being a covered driver would render one "a potential 'insured'" entitled to coverage under the policy. Ibid. (quoting Webb v. AAA Mid-Atl. Ins. Grp., 348 F. Supp. 2d 324, 331 (D.N.J. 2004)).

## III.

UIM coverage is defined under N.J.S.A. 17:28-1.1(e)(1) as: "insurance for damages because of bodily injury . . . resulting from an accident arising out of the ownership, maintenance, operation or use of an underinsured motor vehicle." Defendant argues plaintiff is not entitled to the $100,000 in UIM coverage because she was neither a "named insured" nor a "family member" as defined under the policy; thus, the step-down provision of $15,000 applied. Defendant posits the declaration and UIM step-down endorsement "clearly and unambiguously demonstrate[d] that [plaintiff's] recovery of UIM benefits was expressly limited." We disagree.

The UIM policy endorsement's "limit of liability" step-down for insureds who are neither a named insured nor a family member is clear, but that alone is not dispositive of the UIM coverage issue. Unquestionably, a "step-down in coverage has been approved in the setting of eligibility for first-party UIM coverage." Huggins v. Aquilar, 246 N.J. 75, 89 (2021). However, a policy's

12

permissive step-down does not dictate coverage when the policy language is otherwise ambiguous or conflicts with the declaration. See Lehrhoff, 271 N.J. Super. at 346-47 (finding the declaration is of "signal importance" because "a conscientious policyholder, upon receiving the policy, would likely examine [it] to assure that the coverages and their amounts . . . are accurate and in accordance with his [or her] understandings"). Our Supreme Court has elucidated that insurance policies shall be construed "against the insurer, consistent with the reasonable expectations of insureds, when those policies are overly complicated, unclear, or written as a trap for the unguarded consumer." Zacarias, 168 N.J. at 604.

Here, the declaration listed plaintiff as a covered driver. Further, the declaration illustrated the Motils paid the same $103 premium per vehicle for the four identified vehicles and $100,000 in UIM coverage for "[e]ach [p]erson." An objective review of the declaration indicates that because the UIM coverage premiums were the same for each vehicle, the provided UIM coverage would be the same for a named insured, family member, or covered driver, particularly since the declaration included an alternate garaging address for the Jeep.

Specifically, the declaration established that in addition to the Bridgeton address listed for the vehicles, the Jeep had an identified alternate garaging

13

address in Blackwood. "Alternate" is defined as "occurring or succeeding by turns." Alternate, Merriam-Webster, https://www.merriam-webster.com/dictionary/alternate (last visited Mar. 26, 2024). Neither the declaration nor the policy provided a distinction of UIM coverage for a "covered auto" with an identified alternate garaging address. While defendant maintains plaintiff was only entitled to step-down UIM benefits, the declaration does not alert her—a covered driver operating a vehicle garaged at a separately identified alternate address—that she did not qualify as a "family member" who was a "resident of [Charles and Louise's] household."

The drafters could have unambiguously included language in either the declaration or the policy alerting that a covered driver using a "covered auto" with an identified alternate garaging address was subject to the step-down in coverage. Specifically, the policy could have clarified that the only qualifying "household" was the residence of the named insured and an identified alternate address was excluded.

We further observe the definitions section of the policy does not define covered driver or alternate garaging address. Therefore, the lack of clarity and distinction in the declaration and policy created ambiguity and fairly leads to the presumption that a covered driver is entitled to UIM coverage, regardless of the UIM step-down provision. Stated another way, a review of the

14

declaration in conjunction with the endorsement does not inform the policyholder that a covered driver charged the same uninsured premium for a vehicle with an accepted alternate garaging address is not entitled to the $100,000 in UIM coverage and is subject to the $15,000 step-down provision.

Pursuant to the language of the declaration, the policyholder had the reasonable expectation that plaintiff, as a covered driver, was entitled to the same UIM policy coverage. Because the ambiguity and contradiction between the declaration and the policy obfuscates the application of the step-down, the "reasonable expectations doctrine" controls. As we established in Lehrhoff, "[t]he interpretation of insurance contracts to accord with the reasonable expectations of the insured, regardless of the existence of any ambiguity in the policy, constitutes judicial recognition of the unique nature of contracts of insurance." 271 N.J. Super. at 348 (quoting Sparks, 100 N.J. at 338). Based on our de novo review of the declaration and policy, we discern no basis to disturb the judge's well-reasoned decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15