NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-2139-17T2
                 A-2146-17T2

ALLSTATE NEW JERSEY
PROPERTY AND CASUALTY
INSURANCE COMPANY,

       Plaintiff-Respondent,

v.

ESTATE OF SEAN MCBRIDE,

       Defendant,

and

ESTATE OF GABRIELLE
LYNNES, by and through its
administratix JULIE GUNN,
and SCOTT M. LERARIO,

       Defendants-Respondents.
_____

ESTATE OF GABRIELLE
LYNNES, by and through its
administratrix JULIE GUNN,

       Plaintiff-Appellant,

v.

ESTATE OF SEAN MCBRIDE,

Defendant,

and

SCOTT M. LERARIO,

Defendant-Respondent.

_____

SCOTT M. LERARIO,

Plaintiff-Appellant,

v.

ESTATE OF GABRIELLE
LYNNES, by and through its
administratrix JULIE GUNN
and ESTATE OF SEAN MCBRIDE,

Defendants.

_____

Argued April 29, 2019 – Decided August 29, 2019

Before Judge Fasciale, Gooden Brown and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket Nos. L-1503-16, L-2576-15, and L-0491-16.

Robert F. DiStefano argued the cause for appellant in A-2139-17 and respondent in A-2146-17 Estate of

Gabrielle Lynnes (Clark & DiStefano, PC, attorneys; Robert F. DiStefano, on the brief).

Stephen M. Van Natten argued the cause for appellant in A-2146-17 and respondent in A-2139-17 Scott M. Lerario (D'Amato Law firm, attorneys; Alexa D'Amato Barrera, of counsel; Stephen M. Van Natten, on the brief).

Francis X. Ryan argued the cause for respondent Allstate New Jersey Property and Casualty Insurance Company (Green, Lundgren & Ryan, PC, attorneys; Francis X. Ryan, on the briefs).

Dominic R. DePamphilis argued the cause for amicus curiae New Jersey Association for Justice (D'Arcy Johnson Day, attorneys; Richard J. Albuquerque and Dominic R. DePamphilis, on the briefs).

PER CURIAM

In these back-to-back appeals, which we consolidate for the purpose of issuing a single opinion, the Estate of Gabrielle Lynnes and Scott Lerario, (collectively, plaintiffs), appeal from the December 1, 2017 Law Division order, denying their respective motions for reconsideration of the trial court's September 22, 2017 orders. The September 22 orders denied plaintiffs' motions for summary judgment, and granted Allstate New Jersey Property and Casualty Insurance Company (Allstate) summary judgment on its declaratory judgment action, thereby determining that Allstate was not obligated to provide liability

insurance coverage for claims arising out of an automobile accident that occurred on March 20, 2015.[1]

In the March 20 automobile accident, Sean McBride was operating a vehicle owned and insured by Lynnes, his girlfriend, when he lost control of the vehicle, veered off the highway into the shoulder, and struck a disabled vehicle belonging to Lerario, who was then tending to his vehicle. As a result, McBride and Lynnes were killed when their vehicle went down an embankment and became engulfed in flames, and Lerario suffered serious bodily injuries. At the time of the accident, although McBride was living with Lynnes, John Kurz, his

---

[1] At the outset, we point out that plaintiffs' notices of appeal only identified the December 1, 2017 order, denying their respective motions for reconsideration, notwithstanding the fact that their case information statements (CIS) referred to the September 22, 2017 summary judgment order. Ordinarily, if the notice of appeal "designates only the order entered on a motion for reconsideration, it is only that proceeding and not the order that generated the reconsideration motion that may be reviewed." Pressler & Verniero, Current N.J. Court Rules, cmt. 6.1 on R. 2:5-1(e)(1) (2019). However, "[w]e are mindful of the fact that in some cases a motion for reconsideration may implicate the substantive issues in the case and the basis for the motion judge's ruling on the summary judgment and reconsideration motions may be the same." Fusco v. Bd. of Educ. of City of Newark, 349 N.J. Super. 455, 461 (App. Div. 2002). "In such cases, an appeal solely from the grant of summary judgment or from the denial of reconsideration may be sufficient for an appellate review of the merits of the case, particularly where those issues are raised in the CIS." Ibid. Such is the case here. Thus, "we will address the propriety of the earlier order," particularly since Allstate "has not argued against our ruling on its validity." W.H. Indus., Inc. v. Fundicao Balancins, Ltda, 397 N.J. Super. 455, 459 (App. Div. 2008).

step-father, listed McBride as a driver under Kurz' automobile liability insurance policy issued by Allstate. After plaintiffs filed separate tort actions seeking damages against McBride's Estate and others, Allstate filed a complaint seeking a declaratory judgment. Ultimately, with the exception of McBride's Estate, which did not participate in the proceedings, all parties moved for summary judgment.

After examining the policy language, determining that there was no dispute that McBride was not a resident relative of the Kurz household as defined under the policy, and distinguishing Lehrhoff v. Aetna Casualty and Surety Company, 271 N.J. Super. 340 (App. Div. 1994), the court granted summary judgment in favor of Allstate. On appeal, plaintiffs raise the following identical arguments for our consideration:

> POINT ONE - . . . THE TRIAL COURT ERRED IN CONCLUDING THAT THE APPELLATE DIVISION DECISION IN [LEHRHOFF] . . . IS NOT CONTROLLING UNDER THE FACTS OF THIS CASE.
>
> POINT TWO - . . . THE TRIAL COURT ERRED BY RELYING EXCLUSIVELY ON THE SUBJECTIVE EXPECTATIONS OF JOHN KURZ MORE THAN TWO YEARS AFTER THE DATE OF THE ACCIDENT RATHER THAN THE OBJECTIVE EXPECTATIONS OF A TYPICAL POLICY HOLDER AT THE TIME OF INCEPTION OF THE POLICY.

POINT THREE - . . . THE TRIAL COURT ERRED BY RELYING UPON TWO CASES CITED BY ALLSTATE IN ITS EFFORT TO MINIMIZE THE RELEVANCE OF THE [LEHRHOFF] DECISION.

POINT FOUR - THE TRIAL COURT ERRED IN DETERMINING AS A MATTER OF LAW THAT SEAN MCBRIDE WAS NOT A DUAL RESIDENT OF HIS PARENTS' HOUSEHOLD ON THE DATE OF THE ACCIDENT.

We granted the New Jersey Association for Justice's (NJAJ) motion to appear in these appeals as amicus curiae. NJAJ raises the following points for our consideration:

POINT I

A GENUINE DISPUTE OF FACT CONCERNING JOHN KURZ'[] EXPECTATIONS PRECLUDES THE ENTRY OF SUMMARY JUDGMENT[.]

POINT II

THE REASONABLE EXPECTATION DOCTRINE APPLIES BECAUSE THE ALLSTATE POLICY IS AMBIGUOUS AND MCBRIDE IS THEREFORE ENTITLED TO EXCESS COVERAGE.

Because we agree there were genuine issues of material fact sufficient to withstand summary judgment, we reverse.

A-2139-17T2

I.

We derive the following facts from evidence submitted by the parties in support of, and in opposition to, the summary judgment motions, viewed in the light most favorable to the non-moving parties. Angland v. Mountain Creek Resort, Inc., 213 N.J. 573, 577 (2013) (citing Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523 (1995)). Prior to the fatal accident, McBride, born January 8, 1980, had resided with his mother, Colleen Kurz, and her husband, John Kurz, at 18 Stoney Creek Drive in Egg Harbor Township (the Kurz residence or Kurz household) since December 2010 when he moved from Pennsylvania. At his deposition, John[2] testified that McBride moved in after "he got divorced" because "he was pretty distraught over his divorce" and "wanted to . . . be with his mother." While residing with the Kurzes, McBride did not pay for any of his living expenses.

In January 2013, McBride moved to John's rental property located at 27 East Rivere Avenue in Northfield (the Northfield residence). Although McBride "was supposed to [pay] $700 a month" in rent, because of his ongoing financial problems, he was in debt to John, who continued to pay for the majority of his

---

[2] We refer to the Kurzes by their first names to avoid confusion caused by their common surname and intend no disrespect by this informality.

A-2139-17T2

living expenses, including his automobile insurance expenses. In addition to living in John's house, McBride also worked at a diner owned by John. When Lynnes was hired at the diner, McBride and Lynnes began a dating relationship.

In June 2014, McBride moved out of the Northfield residence and moved in with Lynnes at 21 Allendale Road in Marmora (the Marmora residence). The Marmora residence was owned by Lynnes' mother, Julie Gunn, and was listed on the market for sale while the couple lived there. Despite his new living arrangement, McBride's driver's license, voter registration profile, and child support/probation account listed the Kurz residence as his address of record. According to the Kurzes' deposition testimony, McBride continued to receive mail at the Kurz residence on occasion. Colleen testified that after McBride moved to the Marmora residence, he would occasionally ask if any mail had arrived for him, and advised her that he would "swing by and get it . . . because [he was] changing [his] address" to the Marmora residence.

Nonetheless, Colleen believed McBride's stay at the Marmora residence was a temporary arrangement that would end once the house was sold. She confirmed that despite having a falling out with McBride in November 2014, after both McBride and Lynnes were fired from the diner due to chronic lateness and unexcused absences, she would have allowed McBride to resume living with

8

her if necessary. In contrast, initially, John expressed reluctance to allowing McBride to return to the Kurz residence. However, ultimately, he acknowledged that he may have allowed it.[3]

On January 23, 2014, while McBride was still living at the Northfield residence, John applied for an automobile insurance policy with Allstate through Lieberman Financial, an authorized agent of Allstate. In the application, John listed the Kurz residence as the address of record, and identified three drivers and three vehicles to be insured under the policy: a 2007 Honda Element, to be driven primarily by Colleen; a 2011 Infiniti G37, to be driven primarily by John; and a 1991 Honda Civic, to be driven primarily by McBride. Although McBride had moved from the Kurz residence to the Northfield residence when John applied for the policy, John testified that he still listed McBride as a resident of his household "because [McBride] lived in [his] other house right around the corner" and "[he] wanted [McBride] to be insured." Allstate ultimately issued a policy to John, effective January 30, 2014.[4]

---

[3] According to the Kurzes, they had very little contact with McBride after he and Lynnes were fired.

[4] Around the same time, John also applied for motorcycle liability insurance with Allstate, identifying McBride as a resident relative of his household and an operator of the motorcycle. According to John, although he had purchased the

Over the next eighteen months, the policy was automatically renewed every six months, extending coverage until June 30, 2015, based on John's continuous payment of the required premiums. During that time, on two separate occasions, John requested the removal of vehicles from the policy. The first occurred on October 16, 2014, when John requested the removal of the 2011 Infiniti G37. The second occurred on November 6, 2014, when John requested the removal of McBride's vehicle, the 1991 Honda Civic. Based on these requests, Allstate issued a new declarations sheet reflecting these changes.

Although the declarations sheet no longer listed McBride's vehicle, it still identified McBride as a listed driver on the policy. However, John testified at his deposition that in November 2014, when he learned that the 1991 Honda Civic had been damaged and requested its removal from his policy, he had also requested the removal of McBride from his policy since he no longer resided at the Kurz residence. [5] Although two Allstate representatives testified during depositions that there was no record of any request by John to remove McBride

---

motorcycle, it was used almost exclusively by McBride. Like the automobile insurance policy, the motorcycle insurance policy was issued by Allstate, effective January 30, 2014.

[5] John never removed McBride's name from the motorcycle insurance policy during this time period.

from the policy, John testified he was under the impression that McBride had been removed from the policy given the premium reduction, and only learned otherwise after the accident. Because the Kurzes never reported the accident, Allstate had no notice of its occurrence until a representative of Esurance, the company that insured Lynnes' vehicle at the time of the accident, contacted Allstate about its policy.

Allstate's seven-page declarations sheet covering the period of the accident indicated that coverage was effective from January 30, 2015, through July 30, 2015. On the first page, John was listed as the "[n]amed [i]nsured[]" at the Kurz residence address, and John, Colleen, and McBride were identified as "[l]isted drivers on [the] policy." A notice on the declarations sheet explained that "[s]ome or all of the information on [the] [p]olicy [d]eclarations [was] used in the rating of [the] policy or . . . could affect . . . eligibility for certain coverages[,]" and requested immediate notification if "any information on [the] [p]olicy [d]eclarations [was] incorrect" or "any coverages [were] not listed or . . . inaccurately listed."

Accompanying the declarations sheet were "policy documents," including Allstate's thirty-five page "Standard Auto Insurance Policy" (policy) and "[p]olicy [e]ndorsement[s]." Generally, the policy was divided into five

11

separate parts: part one outlined its general coverage provisions; part two dealt with personal injury protection (PIP); part three addressed "[a]dded [PIP] [c]overage"; part four covered uninsured motorists (UM) coverage; and part five explained "[p]rotection[s] [a]gainst [l]oss [t]o [t]he [a]uto."

Explaining the general coverage provisions, part one provided:

> If a premium is shown on the [p]olicy [d]eclarations for Bodily Injury Liability and Property Damage Liability, we will pay damages which an [i]nsured person is legally obligated to pay because of:
>
> 1. bodily injury sustained by any person; and
> 2. property damage.
>
> Under these coverages, your policy protects an [i]nsured person from liability for damages arising out of the ownership, maintenance or use, loading or unloading of an [i]nsured auto. . . .
>
>     . . . .
>
> We will defend an [i]nsured person sued as a result of a covered accident involving an [i]nsured auto.

On page nine of the policy, "[i]nsured person[]" was defined as follows:

> a. While using any [i]nsured auto, except a non-owned auto:
>> 1. you;
>> 2. any resident relative; and
>> 3. any other person using it with your permission; or
>> 4. any civil union partner under New Jersey law.

b. While using a non-owned auto:
    1. you; and
    2. any resident relative or
    3. any civil union partner under New Jersey
law.

Page three of the policy defined "[n]on-owned [a]uto" as "an auto used by you or a resident relative with the owner's permission but which is not" "owned by you or a resident relative[,]" or "available or furnished for the regular use of you or a resident relative."  On the same page, "[y]ou" or "[y]our" is defined as "the policyholder named on the [p]olicy [d]eclarations[6] and that policyholder's resident spouse, including civil union partner under New Jersey law." "Resident" included "a person who physically resides in your household with the intention to continue residence there[,]" or "your unmarried dependent children while temporarily away from home . . . if they intend to resume residing in your household."

On page seventeen of the policy, "[r]elative" was defined as "a person related to the named [i]nsured by blood, marriage, civil union partner under New Jersey law or adoption . . . who is a resident of the same household as the named [i]nsured."  Additionally, "[n]amed [i]nsured" was defined in the policy as "the

---

[6]  The declarations sheet did not identify "the policyholder."

A-2139-17T2

person . . . named as the insured in the [p]olicy [d]eclarations and an individual's spouse or civil union partner under New Jersey law if the spouse or civil union partner under New Jersey law is a resident of the household of the named [i]nsured."

On page four of the policy, Allstate also instructed policyholders about their "[d]uty [t]o [r]eport [p]olicy [c]hanges," explaining:

> Your policy was issued in reliance on the information you provided concerning autos, persons [i]nsured by the policy and your place of residence. To properly insure your auto, you must promptly notify us:
>
> a. when you change your address or the address where any of your autos are garaged; or
>
> b. whenever any resident operators insured by your policy are added or deleted; or
>
> c. whenever the driver's license of a resident operator [i]nsured by your policy is suspended or revoked.

After plaintiffs filed separate tort actions, Allstate filed a complaint for declaratory judgment against McBride's Estate, plaintiffs, and others. Allstate sought a declaration that it was "not obligated to provide liability insurance coverage to [McBride's Estate] for the claims arising out of the [a]ccident," not obligated to provide "a defense of the [t]ort [a]ctions," nor "indemnification against any judgments . . . entered." In the complaint, Allstate alleged the

14

vehicle McBride "was operating at the time of the accident was furnished and available for his regular use and, therefore, was not a 'non-owned auto' nor an 'insured auto' as defined in the [p]olicy." Allstate alleged further that "McBride was not a resident of the [Kurz] household . . . at the time of the accident," and, therefore, his estate was "not entitled to liability insurance coverage under the [p]olicy." Thereafter, an order was entered consolidating all three actions "for purposes of [c]ase [m]anagement and discovery."

Following discovery, plaintiffs moved for summary judgment and dismissal of Allstate's complaint with prejudice.[7] In support, the Lynnes Estate submitted deposition transcripts of the Kurzes and Allstate representatives, David Lieberman and Patricia Selock, as well as numerous documentary exhibits. In accordance with Rule 4:46-2(a), the Lynnes Estate provided a statement of material facts, comprised of sixty numbered paragraphs detailing the undisputed facts. According to the Lynnes Estate, it was undisputed that both Lieberman and Selock acknowledged in their deposition testimony that "McBride was a listed insured person under the policy issued by Allstate" at the time of the accident and "met the definition of a 'named insured'" as defined in the policy. Further, based on the deposition testimony of the Kurzes, McBride

---

[7] The Lynnes Estate filed the formal motion and Lerario joined.

would have been permitted to move back into the Kurz residence. Moreover, the Kurzes testified McBride "never paid any rent, utilities, or made any other significant contributions while he resided at [the Kurz residence,]" and primarily drove vehicles owned by John.

Allstate opposed plaintiffs' motions, and cross-moved for summary judgment. In support, Allstate submitted numerous documentary exhibits, including a transcript of a telephonic statement given by the Kurzes to an Allstate representative on April 6, 2015. In the telephonic statement, Colleen referred to documents she had found after the accident among McBride's belongings, evidencing his change of address after he moved out of the Kurz residence. Among those documents were a phone service contract, a utility bill, and an invoice addressed to McBride at the Marmora residence; a credit card statement and change of address acknowledgement addressed to McBride at a Woodbine, New Jersey, address; and a repair shop invoice addressed to McBride at the Northfield residence. In Allstate's counter-statement of material facts, Allstate recounted John's deposition testimony, during which John testified that McBride "took all of his belongings with him" when he moved out of the Kurz residence, and, similarly, removed "all of his belongings" when he moved out of the Northfield residence.

On September 22, 2017, the judge conducted oral argument on the motions. Following oral argument, the judge entered two orders dated September 22, 2017, one denying plaintiffs' motions and the other granting Allstate summary judgment. On September 28, 2017, the judge issued a supporting memorandum of decision, detailing the respective arguments, describing the undisputed facts, citing the applicable legal principles, and explaining her rationale. According to the judge, Allstate's position was straightforward: "Allstate assert[ed] that . . . McBride was not a resident of the Kurz household and accordingly . . . [was] not entitled to coverage under the Allstate [p]olicy."

In contrast,

> [p]laintiffs argue that because . . . McBride was listed as a driver on the declaration[s] page of the policy, he had a reasonable expectation that he was entitled to all of the coverages and protections afforded by the policy. Plaintiffs further argue that the declaration[s] page did not specifically advise John Kurz, Colleen Kurz[,] or Sean McBride that coverage would not be available to . . . McBride as a listed driver if he was not a resident relative of [the Kurz] household. Plaintiffs rely on [Lehrhoff] in support of their assertion that Allstate must provide coverage and a defense to the Estate of Sean McBride because . . . McBride was a listed driver on the Allstate [p]olicy.

A-2139-17T2

The judge pointed out that the issue in <u>Lehrhoff</u> "was whether the reasonable expectation of the insured raised by the declarations page of the policy may be defeated by express policy limitations to the contrary." According to the judge,

> The [<u>Lehrhoff</u> c]ourt held that under the circumstances of that case, the policy's fine print qualification of the definition of the persons entitled to UM coverage was insufficient to overcome the reasonable expectation of coverage raised by the declaration[s] page and by the express terms of the UM coverage.

However, the judge reasoned that "[t]he facts in [<u>Lehrhoff</u>] [were] distinguishable from the facts of this case."

According to the judge, in <u>Lehrhoff</u>,

> Steven Lehr[h]off was the adult son of Arthur Lehr[h]off. Defendant Aetna issued a standard automobile policy to Arthur . . . that included uninsured and underinsured motorist coverage. Steven . . . was listed on the declaration[s] page of the policy as a regular driver of the insured vehicle. During the policy period, Steven . . . , while a pedestrian, was injured in California in a traffic accident he attributed to a phantom driver. Steven claimed UM benefits under the policy. Aetna rejected the claim on the ground that Steven was no longer a resident of his father's household when the injuries were sustained. The Lehr[h]off family lived in Short Hill[s], New Jersey. Following Steven's graduation from college in June 1990[,] he planned to apply to law school in the fall of 1991. Steven wanted to work in a law[-]related job prior to going to law school, so in September 1990,

Steven took a law[-]related job in Los Angeles, California for an initial ninety[-]day probationary period. The automobile Steven had with him in California was a family automobile, owned by his father, registered in New Jersey, and insured by Aetna under the New Jersey [p]olicy at issue in the case. The accident occurred . . . approximately seven weeks after Steven arrived in California . . . . At the time the policy was issued, . . . Steven was a resident member of his father's household. The [c]ourt found that nothing in the declaration[s] page which listed Steven as a regular driver of the insured vehicle and nothing in the UM coverage section of the policy suggested that the listed drivers were not protected by all of the coverages of the policy. [271 N.J. Super. at 349]. The [c]ourt found the UM section of the policy was confusing. "Only a determined, persistent[,] and experienced reader knowing precisely what information he is seeking would be able to even find the applicable sections of the policy[.]" Id. at 344.

In contrast, in this case, the judge found

It [was] undisputed that on the date of the accident, Sean McBride was living with Gabrielle Lynnes at her mother's home . . . . He was not a resident at John and Colleen Kurz'[] home . . . and he had not been a resident at that home since 2013. In order for Sean McBride to be an insured person under the Allstate [p]olicy[,] he had to be a resident of the Kurz household. He clearly and undisputedly was not a resident of the Kurz household.

It is also undisputed that John Kurz believed that Sean McBride was removed from his Allstate [p]olicy in November 2014 when the 1991 Honda Civic was removed from the Allstate [p]olicy. John Kurz had no expectation that Sean McBride was insured under the

19

Allstate [p]olicy on the date of the accident. John Kurz testified that he did not know that Sean McBride was a listed driver on the Allstate [p]olicy until after the . . . accident.

The definition section of the Allstate [p]olicy is straightforward when it comes to defining an "insured person[,"] "resident[,]" and "non-owned auto[."] There was nothing confusing or misleading about those definitions or their location in the policy. Despite the fact that Sean McBride was listed as a driver on the declaration[s] page of John Kurz'[] Allstate [p]olicy on the date of the accident, [John] Kurz did not believe or assert that Sean McBride was entitled to any coverage under the policy. Moreover, because Sean McBride resided in Marmora with Gabrielle Lynnes from . . . 2014 to the date of the accident, he was not an insured person under the Allstate [p]olicy issued to John Kurz.

Thus, the judge concluded that because "[t]he material and uncontroverted facts . . . clearly show[ed]" that "Sean McBride was not a resident relative of John Kurz on the date of the accident, he [was] not entitled to coverage under the Allstate [p]olicy[,]" and "[t]he fact that he was a listed driver on the declaration[s] page of the policy [did] not change that result." The judge expressly rejected plaintiffs' reliance on Lehrhoff, finding it "distinguishable" and "not controlling under the facts of this case."

The judge reasoned:

In [Lehrhoff], the insured had a reasonable expectation that his son, [who] just graduated from college and had taken an insured family vehicle to California for a

20

temporary job, would be fully covered under the Aetna insurance policy. Moreover, the [c]ourt found that a cursory review of the policy [reinforced] that belief. It was only after a full, careful, sophisticated, and experienced reading of the full policy that the insured would have been informed otherwise. In the case at hand, the insured, John Kurz, had no expectation that Sean McBride would be covered under the Allstate policy because he believed Sean McBride was removed as a listed driver in November 2014. Further, Sean McBride had not resided with John and Colleen Kurz from at least November 2014. For that reason, Sean McBride was not covered under the Allstate [p]olicy . . . on March 20, 2015.

Pursuant to Rule 4:49-2, plaintiffs moved for reconsideration of the September 22, 2017 orders,[8] arguing "that the [c]ourt erred in concluding that [Lehrhoff was] not controlling" and that John "had no expectation that Sean McBride would be covered under the Allstate policy because he believed that Sean McBride was removed as a listed driver in November 2014." Plaintiffs also asserted that the court's decision was "contrary to years of long-standing case law" interpreting insurance "coverage provisions broadly and constru[ing] exclusions of coverage strictly against the insurer." On December 1, 2017, following oral argument, the judge denied the motions in an oral decision, citing plaintiffs' failure to "show[] that the [c]ourt based its decision upon a palpably

---

[8] Once again, the Lynnes Estate filed the formal motion and Lerario joined.

incorrect or irrational basis, or . . . did[ not] consider or failed to appreciate the significance of probative competent evidence."   In an accompanying memorandum of decision, the judge recited and rejected plaintiffs' arguments as recounted above, and reiterated her conclusion.   The judge entered a memorializing order and these appeals followed.[9]

## II.

We review a ruling on a motion for summary judgment de novo, applying the same standard governing the trial court.  Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016) (citation omitted).  Thus, we consider, as the motion judge did, "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party."  Brill, 142 N.J. at 540.  If there is no genuine issue of material fact, we must then "decide whether the trial court correctly interpreted the law."  DepoLink Court Reporting & Litig. Support Servs. v.

---

[9] On January 2, 2018, Allstate's declaratory judgment action was severed from plaintiffs' tort actions, which remained consolidated for discovery purposes. On January 23, 2018, plaintiffs executed a consent order, "agree[ing] to dismiss without prejudice the[ir respective] actions" to allow them to proceed with their appeals. On June 7, 2018, we granted the Lynnes Estate's motion to consider the September 22 and December 1, 2017 orders as final orders, appealable as of right pursuant to Rule 2:2-3(a).

Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)).  We review issues of law de novo and accord no deference to the trial judge's legal conclusions. Nicholas v. Mynster, 213 N.J. 463, 478 (2013).  "[F]or mixed questions of law and fact, [we] give[] deference . . . to the supported factual findings of the trial court, but review[] de novo the lower court's application of any legal rules to such factual findings."  State v. Pierre, 223 N.J. 560, 577 (2015) (first and fourth alterations in original) (quoting State v. Harris, 181 N.J. 391, 416 (2004)).

This standard compels the grant of summary judgment "if the pleadings, depositions, answers to interrogatories[,] and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."  R. 4:46-2(c).  Thus, "[t]o defeat a motion for summary judgment, the opponent '"must come forward with evidence" that creates a genuine issue of material fact.'"  Cortez v. Gindhart, 435 N.J. Super. 589, 605 (App. Div. 2014) (quoting Horizon Blue Cross Blue Shield of N.J. v. State, 425 N.J. Super. 1, 32 (App. Div. 2012)).  However, "conclusory and self-serving assertions by one of the parties are insufficient to overcome the motion," Puder v. Buechel, 183 N.J. 428, 440-41 (2005), and a party opposing the motion must "do more than 'point[]

23

to any fact in dispute' in order to defeat summary judgment." Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (alteration in original) (emphasis omitted) (quoting Brill, 142 N.J. at 529).

In other words, disputes about facts that are "immaterial or of an insubstantial nature" provide no basis to deny the moving party summary judgment. Id. at 480 (quoting Brill, 142 N.J. at 529). Rather, "[a]n issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." R. 4:46-2(c). "The practical effect of [Rule 4:46-2(c)] is that neither the motion court nor an appellate court can ignore the elements of the cause of action or the evidential standard governing the cause of action." Bhagat v. Bhagat, 217 N.J. 22, 38 (2014).

In that regard, pertinent to these appeals are two well-settled principles governing insurance contract interpretation.

> First, in enforcing an insurance policy, courts will depart from the literal text and interpret it in accordance with the insured's understanding, even when that understanding contradicts the insurer's intent, if the text appears overly technical or contains hidden pitfalls, cannot be understood without employing subtle or legalistic distinctions, is obscured by fine print, or requires strenuous study to comprehend.

24

[Zacarias v. Allstate Ins. Co., 168 N.J. 590, 601 (2001) (citations omitted).]

"On this score, under the longstanding 'doctrine of reasonable expectations,' courts should give effect to 'the objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts.'" Cassilli v. Soussou, 408 N.J. Super. 147, 153 (App. Div. 2009) (quoting Zacarias, 168 N.J. at 595). Under the reasonable expectations doctrine, "an objectively reasonable interpretation of the average policyholder is accepted so far as the language of the insurance contract in question will permit." Di Orio v. N.J. Mfrs. Ins. Co., 79 N.J. 257, 269 (1979).

To that end, in Lehrhoff, we held that a policy holder's "reasonable expectations of coverage raised by the declaration[s] page cannot be contradicted by the policy's boilerplate," whether or not in plain language, "unless the declaration[s] page itself clearly so warns the insured." 271 N.J. Super. at 347. Thus, we "regard[ed] the declaration page as having signal importance" in "defin[ing] the insured's reasonable expectations of coverage." Id. at 346. In Zacarias, our Supreme Court "share[d] the sentiments" expressed in Lehrhoff that "the one page most likely to be read and understood by the insured [was] the declarations sheet" and urged insurers "to explore ways to

incorporate as much information as may be reasonably included in the declarations sheet." Zacarias, 168 N.J. at 602-04.

Thus, the average policyholder does not have a duty to "chart his own way through the shoals and reefs of exclusions, exceptions to exclusions, conditions and limitations," and may rely instead on "the declaration page, the one page of the policy tailored to the particular insured and not merely boilerplate," to "define coverage and the insured's expectation of coverage." Lehrhoff, 271 N.J. Super. at 347. "Of course, for a policyholder's expectations to govern over the plain language of an insurance contract, his or her expectations must be objectively reasonable." Cassilli, 408 N.J. Super. at 154 (citing Clients' Sec. Fund of the Bar of N.J. v. Sec. Title & Guar. Co., 134 N.J. 358, 372 (1993)).

Second, "the words of an insurance policy are to be given their plain, ordinary meaning[,]" Zacarias, 168 N.J. at 595, and the plain terms of the contract will be enforced as long as the "entangled and professional interpretation of an insurance underwriter is [not] pitted against that of an average purchaser of insurance," or the provision is not so "confusing that the average policyholder cannot make out the boundaries of coverage[.]" Id. at 601 (first alteration in original) (first quoting Di Orio, 79 N.J. at 270; then quoting Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 247 (1979)). Thus, where an

ambiguity exists, "courts will construe ambiguous language in favor of coverage for the insured." Cassilli, 408 N.J. Super. at 154 (alterations in original) (citing Doto v. Russo, 140 N.J. 544, 556 (1995)). "An ambiguity exists in an insurance contract '[w]hen an insurance policy's language fairly supports two meanings, one that favors the insurer, and the other that favors the insured . . . .'" Ibid. (alterations in original) (quoting President v. Jenkins, 180 N.J. 550, 563 (2004)). However, "[i]n the absence of ambiguity, . . . a court must enforce the policy as written." Ibid. (citing Priest v. Roncone, 370 N.J. Super. 537, 544 (App. Div. 2004)).

These general rules of construction have spawned a universal recognition that "where the policy provision under examination relates to the inclusion of persons other than the named insured within the protection afforded, a broad and liberal view is taken of the coverage extended." Mazzilli v. Accident & Cas. Ins. Co., 35 N.J. 1, 8 (1961). "But, if the clause in question is one of exclusion or exception, designed to limit the protection, a strict interpretation is applied." Ibid. We have previously distinguished the two classes of covered individuals in an insurance contract as follows:

> [T]he term "named insured" is self-defining. The term refers only to the names so appearing in the declaration[s sheet].

27

On the other hand, an insured is any one who is entitled to coverage. This coverage may result by virtue of a person's status as an operator or occupier of a covered auto. In addition, a "family member" of a "named insured" may be an insured.

[Botti v. CNA Ins. Co., 361 N.J. Super. 217, 226 (App. Div. 2003) (citations omitted).]

"In other words, those listed as 'named insureds' are not necessarily the only individuals covered under the policy[,]" and "[o]ther individuals not listed as 'named insureds' may be entitled to liability coverage under certain circumstances enumerated by the policy." Cassilli, 408 N.J. Super. at 155. "Thus, being an 'insured' under a policy 'is a combination of status and circumstance[,]'" ibid. (quoting Webb v. AAA Mid-Atl. Ins. Grp., 348 F. Supp. 2d 324, 331 (D.N.J. 2004)), and, undoubtedly, being "a 'family member' residing in the same household as [the policyholder]" would render one "a potential 'insured[,]'" entitled to coverage under the policy. Ibid. (emphasis omitted).

Here, the judge determined McBride was not entitled to coverage under the Allstate policy on the date of the accident because he "was not a resident relative of John Kurz" and "[t]he fact that he was a listed driver on the declaration[s] page of the policy [did] not change that result." While we agree there was strong evidence McBride no longer physically resided in the Kurz residence, as we stated in Lehrhoff, "we would not exclude, as a factual

A-2139-17T2

proposition requiring plenary evidential resolution," McBride's continued residence in the Kurz residence "by reason of application of the doctrine of dual residency." 271 N.J. Super. at 346.

"Residency has a well-documented definition in New Jersey" and "is not interpreted as a single place of occupancy[.]" Ohio Cas. Ins. Co. v. Estate of Wittkopp, 326 N.J. Super. 407, 412 (App. Div. 1999). "Our courts recognize that a person may have more than one residence but may not have more than one domicile" and "a person may be a resident of more than one household for purposes of the availability of insurance coverage." Arents v. Gen. Accident Ins. Co., 280 N.J. Super. 423, 428 (App. Div. 1995). The concept of "dual household residency" has arisen in insurance cases to expand insurance coverage to children who are residents, if not domiciliaries, of their parents' homes. See Roman v. Correa, 352 N.J. Super. 124, 128-29 (App. Div. 2002).

Indeed, a child's dual residency can extend far into his adult years, even after the child has become emancipated and moved to another state, where he works, pays taxes, and owns property. See Arents, 280 N.J. Super. at 425-26 (determining that a forty-one-year-old son had a dual residency with his parents for insurance purposes). Further, a finding that a person is a resident of one household does not necessarily preclude, as a matter of law, that person's

residence in another household as well. <u>Miller v. U.S. Fid. & Guar. Co.</u>, 127 N.J. Super. 37, 43 (App. Div. 1974). Thus, "[e]xclusivity of residences . . . is not demanded by the cases." <u>Arents</u>, 280 N.J. Super. at 429.

Here, the facts show that in the five years preceding the accident, McBride was in a state of transition, having lived in at least four different residences over that time period. Even his occupancy at the Marmora residence was temporary, given the fact that the house was listed for sale. Indeed, Colleen acknowledged the temporary nature of the arrangement and testified she would have permitted McBride to return to her residence when the house sold. Likewise, John grudgingly made the same acknowledgement. Although Colleen produced documents showing alternate addresses, McBride continued to receive mail at the Kurz residence on occasion, and his driver's license, voter registration profile, and child support/probation account listed the Kurz residence as his address of record. Thus, there was a genuine issue of material fact regarding whether McBride maintained dual residency, entitling him to coverage under the Allstate policy as a resident relative of the Kurzes.

In <u>Lehrhoff</u>, we did not "explore" the issue of dual residency "because we [were] satisfied that Steven [was] entitled to . . . coverage for other reasons, namely, his inclusion on the declaration[s] page as a driver of the insured

A-2139-17T2

vehicle." 271 N.J. Super. at 346. Thus, we determined as a matter of law that "the reasonable expectation doctrine" was dispositive. Id. at 351. Here, there is a genuine issue of material fact regarding McBride's dual residency. Accordingly, given the evidence adduced in the motion record, we conclude that the judge erred in granting summary judgment to Allstate based on a finding, as an undisputed fact, that McBride was not a resident relative of the Kurz residence.

We also disagree with the judge's finding that John "had no expectation that . . . McBride would be covered under the . . . policy because he believed . . . McBride was removed as a listed driver" prior to the accident. Based on the motion record, the Allstate representatives disputed John's account, testifying that there was no record of John making such a request. John's testimony was also contradicted by the undisputed fact that McBride's name remained on the declarations page as a listed driver. As we posited in Lehrhoff, "[t]he question then . . . is whether the typical automobile policyholder would understand and expect from the declarations page . . . that each of the listed drivers was entitled to all of the coverages and all of the protections afforded by the policy." 271 N.J. Super. at 348.

In Lehrhoff, we answered that question "in the affirmative." Ibid. We explained that "look[ing] at the declaration page from the point of view of the insured[,]"

> [a]ll that really appears on it is identity of coverages and identity of drivers. The natural, sensible and wholly justifiable inference is that by listing the drivers using the vehicle, including the insured himself, the purchaser of the policy is protecting all of them equally and, presumably, protecting them equally in respect of all the stated coverages without qualification and without limitation. Nothing in the declaration page suggests to the contrary . . . .

> [Id. at 349.]

Here, in reaching a contrary conclusion, the judge credited the disputed subjective expectation of John, rather than the objectively reasonable expectation of "the typical automobile policyholder[,]" id. at 348, or the "intended beneficiar[y]." Cassilli, 408 N.J. Super. at 153. The judge also determined there was no ambiguity in the policy's requirement that an "insured person" using "a non-owned auto" had to be a "resident" relative, which McBride was not. However, the judge overlooked the fact that nothing in the declarations page "clearly so warn[ed] the insured." Lehrhoff, 271 N.J. Super. at 347. As we acknowledged in Lehrhoff, "'[t]he interpretation of insurance contracts to accord with the reasonable expectations of the insured, regardless

of the existence of any ambiguity in the policy, constitutes judicial recognition of the unique nature of contracts of insurance.'" Id. at 348 (quoting Sparks v. St. Paul Ins. Co., 100 N.J. 325, 338 (1985)).

Here, contrary to the judge's finding, the doctrine of dual residency, reinforced by the reasonable expectations of the typical policyholder and intended beneficiary, created genuine issues of material fact "requiring plenary evidential resolution," Lehrhoff, 271 N.J. Super. at 346, and precluded summary judgment. Because the judge's factual findings are not supported by the motion record, her application of Lehrhoff to those findings is flawed. Accordingly, we reverse the order granting summary judgment to Allstate. Based on our decision, we need not address the parties' remaining arguments.

Reversed. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION